ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 0 7 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **GEORGE MARK TUGGLE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **FILE NO.:** |
| | : | 1:06-cv-0272E-O |
| **CLAYTON COUNTY SHERIFF** | : | |
| **VICTOR HILL, in both his official** | : | |
| **and individual capacities, and** | : | |
| **DEPUTY SHERIFF JOANN** | : | |
| **BORRELLI,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

The Plaintiff **George Mark Tuggle** states his Complaint against **Clayton County Sheriff Victor Hill** and **Deputy Sheriff Joan Borrelli**, as follows:

## INTRODUCTION

1.

This is a civil action arising from the unlawful arrest, detention and prosecution of George Mark Tuggle, [hereinafter "Tuggle"], by the wilful and wrongful acts of the Defendants in violation of Tuggle's rights under the First and Fourth Amendment of the United States Constitution and Constitution and the laws of the State of

-1-

Georgia. Tuggle asserts his federal claims pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution. His state law claims are pendant claims that fall within this Court's pendant jurisdiction. Tuggle seeks equitable relief, monetary damages, attorneys' fees and costs and a trial by jury

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction over Tuggle's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper in the Northern District of Georgia, [hereinafter "District"], pursuant to 28 U.S.C. § 1391 because all parties reside in Clayton County, [hereinafter "County"], which is located in this District and the Plaintiff's claims arose in this District.

## PARTIES

4.

George Mark Tuggle is a citizen of the State of Georgia who resides within the District and is entitled to assert claims of this kind and nature.

5.

Sheriff Victor Hill, [hereinafter "Sheriff Hill"], is a citizen of the State of Georgia residing in the District, and is subject to the personal jurisdiction of this Court. Sheriff Hill is sued in both his official capacity as a constitutional officer and in his individual capacity. He may be personally served with the Complaint and summons at the County Sheriff's Office, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

6.

At all times relevant to this action, Sheriff Hill was the elected County Sheriff. Pursuant to his oath of office, Sheriff Hill swore to uphold and enforce the Constitutions and laws of the United States and the State of Georgia within the County.

7.

At all times relevant to the claims asserted herein, Sheriff Hill was acting under color of state law, and within the scope of his discretionary functions when he decided to order, authorize, institute and pursue the arrest, detention and criminal prosecution of Tuggle.

-3-

8.

Tuggle asserts claims against Sheriff Hill, individually and in his official capacity as an independent, constitutional, elected official acting neither as an arm of the State of Georgia nor the County.

9.

In his official capacity as an independent, constitutional, elected official, Sheriff Hill's actions, as alleged herein, were not subject to review by either the State of Georgia or the County Board of Commissioners. Sheriff Hill was the final policy maker on behalf of the independent, constitutional and elected office of Sheriff for the County at all times relevant to this action.

10.

Sheriff Hill exercised his final policy making authority in directing the actions of his subordinate employees, to effect the unlawful, retaliatory arrest, detention and prosecution of Tuggle.

11

Deputy Sheriff Joann Borrelli, [hereinafter "Borelli"], is a citizen of the State of Georgia residing in the District and is subject to the personal jurisdiction of this Court. She may be personally served with the Complaint and summons at the County

-4-

Sheriff's Office, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

12

At all times relevant to the claims asserted herein, Borrelli was employed and sworn to serve as a Deputy Sheriff under the general direction and ultimate supervision of Sheriff Hill. Pursuant to her oath of office, Borrelli swore to uphold and enforce the Constitutions, and laws of the United States and the State of Georgia within the County.

13.

At all times relevant to the claims asserted herein, Borrelli was acting under color of state law and within the scope of her discretionary functions on or about January 4, 2005, when she obtained the two criminal warrants against Tuggle, which resulted in his arrest, detention and prosecution.

## **FACTUAL ALLEGATIONS**

14.

In the November, 2004 General Election, Sheriff Hill was elected to serve a four (4) year term in the independent public office of County Sheriff. He was formally sworn into office on or about January 3, 2005. Sheriff Hill's opponent in the election was the two (2) term incumbent, Stanley Tuggle, who is the Plaintiff's

brother.

15.

When a new sheriff is elected, every sworn officer in the sheriff's department must be re-sworn by the new sheriff.

16.

On or about January 3, 2005, Sheriff Hill presided over "swearing in" ceremonies at the Clayton County Sheriff's Department. Sheriff Hill invited twenty-seven (27) long-serving, decorated sheriff deputies to the ceremony. When they arrived, they were summarily fired and required to turn in their badges, weapons and car keys. Sheriff Hill then ordered armed deputy sheriffs to escort all twenty-seven (27) terminated deputy sheriffs off the grounds of the sheriff's department.

17.

Sheriff Hill's action caused an immediate public outcry, and ultimately prompted a high-profile lawsuit filed by the fired deputies which subsequently led to their court-ordered reinstatement.

18.

Tuggle has been a long-term resident of the County. Since his brother served as the Sheriff, he had known many of the terminated deputy sheriffs for years. As a

citizen, Tuggle strongly opposed Sheriff Hill's illegal actions in terminating these deputies, who were among the most experienced and best trained law enforcement officers in the County.

19.

Acting as a citizen of the County, Tuggle made an effort to voice his opinions on this matter of great public concern directly to Sheriff Hill, by calling the sheriff's office on January 3, 2005, and again on January 4, 2005. Tuggle first called the main number at the sheriff's office. When no one answered, he left a voice message identifying himself and requesting a meeting with Sheriff Hill to discuss his concerns regarding the terminations of the deputy sheriffs. At one point in his message, he angrily referred to Sheriff Hill as "that short little bastard sheriff."

20.

When he did not receive a return call, Tuggle called Sheriff Hill's direct line the next day. Jon Antoine, a sheriff's office employee, answered, told Tuggle Sheriff Hill "was in a meeting," and asked if he wanted to leave a message. Tuggle identified himself by name and told Antoine that "firing these people who had families was low; anyone who would do that is scum!"

-7-

21.

When Sheriff Hill was made aware of Tuggle's two (2) calls and the content of his statements, he promptly formulated a plan to retaliate against Tuggle. First, he ordered subordinate employees to retrieve and save Tuggle's voice message, and he also ordered Antoine to prepare a statement concerning his telephone conversation with Tuggle.

22.

Sheriff Hill then directed Borrelli to appear before a County Magistrate Judge to swear out two (2) warrants against Tuggle for the crime of Harassing Phone Calls.

23.

Sheriff Hill ordered Borrelli to swear out the warrants against Tuggle when he knew that no legal or factual basis existed to seek issuance of a criminal warrant against Tuggle.

24.

Sheriff Hill ordered Borrelli to swear out the warrants against Tuggle when he knew that Tuggle had a constitutional right to express his displeasure with Sheriff Hill's termination of the deputy sheriffs. Further, Sheriff Hill knew that retaliating against a private citizen in an effort to silence public criticism violated the United

States Constitution.

25.

Given her training, experience and general knowledge as a law enforcement officer, Borrelli knew that no legal or factual basis existed to support issuance of a warrant for Harassing Telephone Calls against Tuggle and that Sheriff Hill had asked her to carry out an unlawful order that would lead to the arrest, detention and prosecution of a private citizen.

26.

Borrelli did secure two (2) criminal warrants for Tuggle's arrest even though she had not personally witnessed any of Tuggle's conduct. Pursuant to her training, experience and general knowledge as a law enforcement officer, Borrelli also knew she had a duty to refuse to carry out such an unlawful order rather than participate in conduct that violated the civil rights of a private citizen. Borrelli ignored her duty and instead knowingly participated in Sheriff Hill's retaliatory prosecution of Tuggle.

27.

Shortly after Borrelli swore out the warrants, Sheriff Hill ordered two deputy sheriffs to go to Tuggle's home to execute the warrants by arrest.

-9-

28.

When the deputy sheriffs arrived, Tuggle's wife answered the door. The deputy sheriffs told her they had two warrants for her husband's arrest. Tuggle's wife was shocked by this information. She told them Tuggle was at work, and she immediately called her husband to tell him that two deputy sheriffs had arrived at their home, without warning, with arrest warrants. Tuggle eventually spoke with a deputy sheriff by telephone. They agreed he would turn himself in to the Clayton County jail after he got off work at 7:00 p.m.

29.

Ten minutes later, the deputy sheriff called Tuggle back at work to inform him that Assistant Chief William Casel, Sheriff Hill's second in command, had refused to permit any delay, and demanded Tuggle turn himself in at the jail within the hour, or he would send an officer to arrest him at his workplace.

30.

Fearful of being arrested on the job, Tuggle told the deputy sheriff he would leave work immediately and turn himself in at the Clayton County Jail.

31.

When Tuggle arrived at the jail, the receiving officer ordered him to sit.

-10-

Deputy Chief Casel and three (3) other officers approached Tuggle. Since Tuggle

knew Deputy Chief Casel, he tried to reason with him, but Casel ignored Tuggle and

ordered him to "get against the wall." Tuggle complied, was frisked and then rougly

hand cuffed by an officer.

32.

Led by Deputy Chief Casel, the officers escorted Tuggle to the jail Intake area.

As they walked towards the Intake area, one of the deputies kept loudly shouting for

everyone to "get back," suggesting that Tuggle was a dangerous criminal who

presented a threat to any person in his vicinity.

33.

At the Intake desk, Tuggle was frisked again. During the Intake interview, the

intake officer noted Tuggle's obvious anxiety and distress and checked Tuggle's

blood pressure. It was so high that a nurse was called in to check Tuggle's blood

pressure periodically during the intake process. She checked it four (4) more times.

The nurse told Tuggle his blood pressure was "at stroke level."

34.

Given the impending medical crisis, the nurse took charge of Tuggle and

placed him in an observation cell. His blood pressure was checked twice more and

-11-

continued to be high. Tuggle was brought to the Infirmary and given an EKG exam. Throughout the entire time Tuggle was receiving medical attention, armed guards continued to surround him so to convey the impression he was a threat to others and to exacerbate his anxiety and stress.

35.

After the EKG, Tuggle was escorted by his guards to a dressing area. He was ordered to strip and don the orange jump suit. Orange was the coded color denoting he was a person in custody for committing a violent felony.

36.

Tuggle was fingerprinted and photographed in the orange jumpsuit and taken back to the dressing area. After being photographed, he was ordered to change into a yellow jump suit.

37.

Tuggle later learned Sheriff Hill had ordered Tuggle photographed in an orange jumpsuit for his "book-in" photograph. Sheriff Hill then released the photograph to the news media.

38.

Two officers escorted Tuggle back to the Intake area. On the way, one deputy

-12-

turned right and one turned left just to confuse Tuggle, who was ordered to follow both officers. Tuggle raised his hand as a plea to indicate and said that he could only follow one deputy at a time. A deputy promptly screamed "his hands are up" causing deputies to run at Tuggle with the intention of physically restraining him and doing. physical harm to him. Tuggle immediately placed his hands behind his back to avoid being attacked.

39.

A nurse in the Intake area again intervened to stop the harassment and abuse of Tuggle. Concerned about Tuggle's high blood pressure , she told the officers that he needed to sit down for a few minutes. The nurse ultimately took charge of Tuggle and insisted he remain in the Intake area under medical observation.

40.

The nurse was not a sheriff's office employee. She was an independent contractor providing medical services at the jail pursuant to a contract with her employer, Georgia Correctional Healthcare, LLC.

41.

Tuggle remained in custody from approximately 3:48 p.m. until approximately 10:00 p.m. the following day when he was released on a \$2,000.00 bond.

-13-

42.

The County Solicitor General reviewed the sheriff's department's "evidence" supporting the criminal charges against Tuggle, and then dismissed the charges. The Solicitor General concluded Tuggle's actions did not, as a matter of fact and law, constitute a crime.

43.

When Sheriff Hill was asked by the local media to comment on the Solicitor General's decision to dismiss the case, he stated, "He may have beat the rap, but he didn't beat the ride; and I'm sure he won't be calling my office anymore."

44.

Tuggle's arrest has caused irreparable harm to his reputation in the community where he was born, raised and had lived for much of his adult life. The arrest has jeopardized his employment and negatively affected his business relations with many customers and colleagues within his industry.

45.

As a direct and proximate cause of the unlawful arrest and detention, Tuggle has experienced pain and suffering, extreme emotional distress, anxiety, humiliation, outrage and substantial damages to his professional and personal reputation.

-14-

## **COUNT I**

## **FOURTH AMENDMENT – 42 U.S.C. §1983**

### **(False Arrest)**

46.

The foregoing paragraphs one (1) through forty five (45) are incorporated herein by this reference.

47.

At all times relevant to this action, Sheriff Hill was the duly elected County Sheriff acting under color of state law, within the scope of his discretionary functions, and with final policy making authority as an independent, constitutional official under the Constitution of the State of Georgia.

48.

At all time relevant to this action, Borrelli was acting under color of state law and within the scope of her discretionary functions as an employee of the County Sheriff.

49.

Based upon their experience, knowledge and training as law enforcement officers, Defendants knew that Tuggle did not commit the offense of Harassing

-15-

Telephone Calls through his actions on January 3, 2005 and January 4, 2005.

50.

Under the facts and circumstances alleged herein, an objectively reasonable law enforcement officer would have known that no arguable probable cause existed to support issuance of arrest warrants for any crime at all, much less the crime of Harassing Telephone Calls.

51.

At all times relevant to this action, the law was established with obvious clarity that swearing out an arrest warrant without probable cause, arresting a citizen pursuant to such a warrant and depriving a citizen of his liberty violated the Fourth Amendment of the United States Constitution.

52.

As a direct and proximate cause of the Defendants unlawful actions, Tuggle was seized and detained against his will, and thereby suffered a loss of liberty in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, entitling him to actual and compensatory damages in an amount to be determined by the enlightened conscience of the jury.

-16-

53.

The actions of the Defendants described herein were willful, deliberate, and malicious, thereby entitling Tuggle to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT II

## FOURTH AMENDMENT – 42 U.S.C. § 1983

## (Malicious Prosecution)

54.

The foregoing paragraphs one (1) through fifty three (53) are incorporated herein by this reference.

55.

At all times relevant to this action, Sheriff Hill was the duly elected County Sheriff acting under color of state law, within the scope of his discretionary functions, and with final policy making authority as an independent, constitutional official under the Constitution of the State of Georgia.

56.

At all time relevant to this action, Borrelli was acting under color of state law and within the scope of her discretionary functions as an employee of the County

Sheriff.

57.

The Plaintiff's criminal prosecution was instituted pursuant to two valid warrants sworn out by Borrelli at the direction of Sheriff Hill on or about January 4, 2005.

58.

The Plaintiff's criminal prosecution terminated in her favor when the Solicitor General dismissed the charges against Tuggle.

59.

The Defendants knowingly and willfully instituted and maintained a criminal prosecution against Tuggle with malice and without probable cause.

60.

Under the facts and circumstances alleged herein, objectively reasonable law enforcement officers would have known that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

61.

At all times relevant to this action, the law was established with obvious clarity

-18-

that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

62.

As a direct and proximate result of the Defendants' unlawful actions, Tuggle was seized and detained against his will, subjected to criminal prosecution in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

63.

As a direct and proximate cause of the Defendants' unlawful actions, the Plaintiff has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

64.

As a direct and proximate cause of the Defendants' unlawful actions, Tuggle has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

65.

The Defendants' unlawful actions were done willfully, deliberately, and maliciously, thereby entitling Tuggle to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT III

## FIRST AMENDMENT – 42 U.S.C. § 1983

## (Retaliatory Prosecution)

66.

The foregoing paragraphs one (1) through sixty five (65) are incorporated herein by this reference.

67.

At all times relevant to this action, Sheriff Hill was the duly elected County Sheriff acting under color of state law, within the scope of his discretionary functions, and with final policy making authority as an independent, constitutional official under the Constitution of the State of Georgia.

68.

At all time relevant to this action, Borrelli was acting under color of state law and within the scope of her discretionary functions as an employee of the County

Sheriff.

69.

Tuggle engaged in constitutionally protected speech when he telephoned the County Sheriff's Office on January 3, 2005 and January 4, 2005.

70.

As fully described herein, the Defendants retaliated against Tuggle for engaging in constitutionally protected speech by unlawfully securing two arrest warrants for Harassing Telephone Calls without probable cause, arresting him, incarcerating him, and subjecting him to criminal prosecution, all in an effort to retaliate against him and chill speech by a private citizens that was critical of Sheriff Hill and his administration.

71.

A reasonable officer in the Defendants' positions would have known that retaliating against a private citizen for engaging in constitutionally protected speech violated the First Amendment of the United States Constitution.

72.

At all times relevant to this action, the law was established with obvious clarity that retaliating against a private citizen for engaging in constitutionally protected

speech violated the First Amendment of the United States Constitution.

73.

As a direct and proximate result of the Defendants' retaliatory prosecution, Tuggle was seized and detained against his will and prosecuted in violation of his rights under the First and Fourteenth Amendments to the United States Constitution.

74.

As a direct and proximate cause of the Defendants' unlawful actions, Tuggle has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount  to be proven at trial.

75.

As a direct and proximate cause of the Defendants' unlawful actions, Tuggle has incurred compensatory damages for pain, suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of reputation, and other elements thereof in an amount to be determined by the enlightened conscience of the jury.

76.

The Defendants' unlawful actions were done willfully, deliberately and maliciously, thereby entitling Tuggle to an award of punitive damages in an amount

to be determined by the enlightened conscience of the jury.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

A)   That the Court declare that Defendants' actions, policies, and practices complained of herein violated the rights of the Plaintiff under the First, Fourth and Fourteenth Amendments of the Constitution of the United States of America;

B)   That Defendants, their agents, their employees and successors be permanently enjoined from violating the rights of the Plaintiff and others under the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America;

C)   That special damages be awarded to compensate the Plaintiff for his economic injuries as a consequence of the Defendants' violations of his rights in an amount to be determined by the enlightened conscious of the jury;

D)   That compensatory damages be awarded against each of the Defendants individually to compensate the Plaintiff for his pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation, as a consequence of the Defendants' actions in an amount to be determined by the enlightened conscious of the jury;

E)   That punitive damages be awarded against the Defendants in an amount to be determined by the enlighten conscious of the jury to deter them and others from similar misconduct in the future;

F)   That a trial by jury be had on all issues wherein a jury trial is permitted under law;

G)   That attorney's fees and expenses of litigation be awarded as authorized under 42 U.S.C. §1988;

H)   That prejudgment interest be awarded; and,

I)   That the Court award such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted this 7th day of February, 2006.

A. LEE PARKS, JR.
State Bar No. 563750
WILLIAM J. ATKINS
State Bar No. 027060
ELEANOR M. ATTWOOD
State Bar No. 514014

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, 26th Floor
Atlanta, GA   30309
(404) 873-8000
(404) 873-8050
Attorneys For Plaintiffs

-24-